**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0070-22

PINE INVESTMENTS, LLC,

    Plaintiff-Respondent,

v.

GURUDEV DAT ASTROLOGY
AND PALMISTRY CENTER, LLC,
KAUSHIK PATHAK, MIHIR
PATHAK, and VARSHA PATHAK,

    Defendants-Appellants.

_____

Submitted January 17, 2024 – Decided May 7, 2025

Before Judges Gooden Brown and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. F-012013-15.

Law Offices of G. Aaron James, attorney for appellants (G. Aaron James, of counsel and on the briefs).

Law Office of Mechelle R. Buksar, LLC, attorney for respondent (Mechelle Buksar Musgrove, of counsel and on the brief).

The opinion of the court was delivered by

GOODEN BROWN, J.A.D.

In this residential foreclosure matter, defendant Gurudev Dat Astrology and Palmistry Center, LLC (Gurudev), and individual defendants Kaushik Pathak, Mihir Pathak, and Varsha Pathak (Pathak defendants) appeal from two Chancery Division orders: (1) a November 7, 2019 order granting summary judgment in favor of plaintiff Pine Investments, LLC; and (2) a June 28, 2022 final judgment of foreclosure in plaintiff's favor.

Gurudev signed a one-year promissory note (note or original note) to plaintiff, secured by a mortgage on residential property. Gurudev later signed a modification (modified note), which the Pathak defendants signed as personal guarantors. In moving for summary judgment, plaintiff did not provide the original note, but submitted the modified note, mortgage, and a lost note affidavit from its representative, Pinky Shah. The trial court found plaintiff met its burden to establish the validity of the note and mortgage, amount of defendants' indebtedness, and plaintiff's right to foreclose. Defendants appeal, arguing plaintiff did not sufficiently prove the terms of the original note under Investors Bank v. Torres, 243 N.J. 25 (2020), and that there exists a genuine

issue of material fact as to the note's terms and existence.  We affirm in part, and reverse in part.

## I.

On August 27, 2010, Gurudev signed the original promissory note and executed a residential mortgage[1] to plaintiff encumbering property located in Lake Hiawatha.  According to the mortgage, in the note, Gurudev promised to "pay $312,000[] (called 'principal'), plus interest in accordance with the [note's] terms."  The mortgage did not reference the Pathak defendants in their individual capacities.

The mortgage further stated:

> The [n]ote provides [that] interest[-]only payments for eleven . . . months of $2,600[] per month at a yearly interest rate of ten percent . . . shall be due and payable on the [first] day of the month beginning on October 1, 2010[,] and continuing on the [first] day of each successive month through August 1, 2011.  A balloon payment of $312,000[] plus interest for the [twelfth] month in the amount of $2,600[] will be due on September 1, 2011[,] in the total amount due of $314,600[].  All sums owed under the [n]ote are due no

---

[1] Defendants describe the agreement as a "commercial loan," but the trial court properly treated this case as a residential mortgage foreclosure since the Pathak defendants lived on the property where Kaushik Pathak also operated a business. Defendants previously disputed whether plaintiff complied with the requirements of the Fair Foreclosure Act, N.J.S.A 2A:50-53 to -68, but have not renewed that argument on appeal.

3

later than September 1, 2011.  All terms of the [n]ote are made part of this [m]ortgage.

The mortgage also provided that Gurudev would "make regular monthly payments" to plaintiff of "[one-twelfth] of the yearly real estate taxes" on the property at plaintiff's request.  Upon default, Gurudev was required to "pay the full amount of all unsaid principal, interest, other amounts due on the [n]ote and th[e m]ortgage and [plaintiff's] costs of collection and reasonable attorney fees."  The mortgage was recorded on October 7, 2010, with the Morris County Clerk.

On February 15, 2013, about eighteen months after the note matured, Gurudev and plaintiff agreed to a modification.  The modified note (1) stated plaintiff and Gurudev acknowledged an "outstanding principal balance" on the note of "$314,600"; (2) extended the note for one year "based on an interest[-]only payment schedule with a balloon payment due on or before January 31, 2014, at an interest rate of ten percent . . . per annum, commencing with the February 1, 2013 payment"[2]; and (3) stated the original note's terms "remain[ed] in full force and effect" except as superseded by the modified note.

---

[2]  The modified note also listed the balloon payment due date as "on or before February 18, 2014," in contrast to the January 31, 2014 due date listed in the body of the modified note.

A-0070-22

The modified note also listed the Pathak defendants as guarantors. It was notarized and signed by Gurudev, the Pathak defendants, and plaintiff, and attested to by their respective attorneys. Shah, identified as plaintiff's managing member, signed on behalf of plaintiff. The modified note was recorded with the Morris County Clerk on March 7, 2013.

According to plaintiff, defendants defaulted in October or November 2013.[3] Plaintiff filed a foreclosure complaint against the Pathak defendants on or around March 26, 2015. The complaint alleged that each of the Pathak defendants was "an individual borrower and personal guarantor, pursuant to the . . . [p]romissory [n]ote and [m]ortgage." However, the complaint did not name Gurudev as a defendant and did not include a facsimile of the original note.

On June 18, 2015, the Pathak defendants, represented by counsel, filed a contesting answer with six affirmative defenses. In the answer, the Pathak defendants specifically admitted "executing a [n]ote and [m]ortgage" that "contained a default clause," but otherwise denied the contents and terms alleged in the complaint. Among the affirmative defenses, the Pathak defendants

---

[3] Over the course of the litigation, plaintiff alleged three different default dates – October 28, 2013, October 29, 2013, and November 29, 2013.

asserted plaintiff lacked "standing" to bring the foreclosure action and lacked "privity" because there was "no agreement with [p]laintiff" and "[p]laintiff [was] not the owner and holder of the alleged original [n]ote and [m]ortgage."

On March 24, 2016, plaintiff moved for summary judgment. In support, plaintiff's attorney certified that a "true and correct official copy" of the original note and mortgage were attached to the moving papers. However, only the mortgage and modified note were attached. Plaintiff also submitted a certification by Shah, identified as "a member of [plaintiff] with personal knowledge of the facts." Shah averred that plaintiff loaned defendants $314,600 on August 27, 2010, pursuant to a promissory note and mortgage that were subsequently modified. According to Shah, "[d]efendants failed to honor their contractual obligations," despite "numerous demands for payment," and there was "an outstanding balance of $399,935 as of April 1, 2016." Defendants did not oppose the motion.

On April 25, 2016, the court struck the Pathak defendants' answer and deemed the matter uncontested. In the accompanying statement of reasons, the court found:

> On August 27, 2010, [d]efendants executed a [n]ote and [m]ortgage to [p]laintiff. Plaintiff submitted a certified true copy of the [n]ote that is written to [p]laintiff. This [c]ourt finds that those documents are

6

proper and sufficiently show that no genuine issues of material fact exist regarding [p]laintiff's standing to bring this action. Plaintiff is the original lender and[,] as such, [h]as standing to enforce the [n]ote.

The court also found that the Pathak defendants "defaulted under the [n]ote and [m]ortgage, which gives [p]laintiff the right, at its option[,] to accelerate the loan and commence foreclosure proceedings against the mortgaged premises." However, according to the court, plaintiff failed to serve a notice of intention to foreclose (NOI) on defendants "at least thirty days prior to filing the [c]omplaint." As such, the court ordered the service of a "remedial" NOI "before [p]laintiff [could] proceed with the foreclosure."

On May 10, 2016, plaintiff filed a motion for reconsideration. The motion was unopposed. In support of the motion, plaintiff submitted a certification prepared by a member of its attorney's firm attesting that a NOI had been duly served on defendants well over thirty days before the foreclosure complaint was filed. In addition, for the first time, plaintiff submitted a purported copy of the original note, dated August 27, 2010.

In part, the note read:

> As partial consideration for the transfer of title to [the Lake Hiawatha house], . . . pursuant to the [c]ontract for [s]ale of [r]eal [e]state entered into by and between the parties, dated May[] 2010, [Gurudev] promise[s] to pay the sum of $312,000[] (called "principal") to

7

[plaintiff]. Interest at a yearly rate of ten . . . percent will be charged on that part of the principal which has not been paid beginning thirty . . . days from the date of this [n]ote and continuing through August 26, 2011[,] when the [n]ote must be paid in full. Monthly payments [will be] $2,600[] for interest only for eleven . . . months. A balloon payment of $312,000[] plus interest for the twelfth . . . month in the total amount of $314,600[] is due no later than August 26, 2011.

. . . [Gurudev] will pay all amounts owed under this [n]ote no later than August 26, 2011. All payments will be made to [plaintiff] at the address shown above or to a different place if required by [plaintiff].

. . . .

. . . If [plaintiff] has not received any payment within ten . . . days after its due date, [Gurudev] will pay [plaintiff] a late charge of five . . . percent of the payment.

The note had a "[p]ersonal [g]uaranty" section stating, "the undersigned[] do hereby jointly, severally, individually and personally guarantee the performance of the principal obligor of the within . . . [n]ote." There were signature lines for all three Pathak defendants. However, the note was unsigned, and there was no accompanying certification declaring its authenticity.

On June 13, 2016, the court granted reconsideration and forwarded the case to the Office of Foreclosure, noting that the court was "satisfied that an NOI was previously sent to defendant[s]." Plaintiff subsequently moved for

8

final judgment of foreclosure in the Office of Foreclosure, which denied plaintiff's motion on procedural grounds.

On November 13, 2017, plaintiff moved to amend its complaint to include Gurudev as a defendant. The motion was unopposed. The court granted the motion on February 12, 2018, and plaintiff filed its first amended complaint on February 21, 2018. After the Pathak defendants and Gurudev (collectively, defendants) failed to respond to plaintiff's first amended complaint, default was entered against them on April 17, 2018. Ultimately, the court vacated the default on defendants' motion[4] and ordered plaintiff to file a second amended complaint to address procedural deficiencies.

On October 25, 2018, plaintiff filed its second amended complaint. Represented by new counsel, defendants filed a contesting answer on May 7, 2019, with twenty-eight affirmative defenses. Among other things, the answer disputed plaintiff's possession of the note. On June 19, 2019, plaintiff moved for summary judgment, to strike defendants' answer, and for an award of counsel fees. Defendants opposed the motion and cross-moved for sanctions against plaintiff's counsel and to dismiss the complaint as to the Pathak defendants.

---

[4] The default was vacated in an order entered April 17, 2019.

 A-0070-22

In support of its summary judgment motion, plaintiff attached Shah's certification, averring personal knowledge of plaintiff's business records, including the original note and mortgage, "as its member in charge of loan documentation." Shah stated defendants executed a note and mortgage encumbering the Lake Hiawatha property on August 27, 2010, and plaintiff loaned them a sum of $314,600, but "defendants failed to honor their contractual obligations." Shah otherwise failed to attest to the note's terms.

In support of their cross-motion, the Pathak defendants submitted substantially similar certifications stating they were not "individual borrower[s]" as they never "personally execute[d]" the original note or mortgage dated August 27, 2010; never "personally 'promised'" to pay $314,600 plus interest as stated in the modified note; and never "personally secured a mortgage loan" to purchase the property.

In response, plaintiff's counsel certified that the executed original note was lost but its terms were set forth in the mortgage document. In addition, Shah submitted a notarized affidavit swearing the original note had a "principal sum of $312,000[]," was secured by a security instrument "recorded . . . in Morris County," and was "deemed lost" after she conducted a "diligent search" on August 27, 2019. She also swore the Pathak defendants executed the note as

10

personal guarantors, but did not state when the note was lost or if she searched for it prior to 2019.

In a November 7, 2019 order, the court granted plaintiff summary judgment, struck defendants' answer, and entered default against defendants, allowing the matter to proceed as uncontested pursuant to Rule 4:64-1. The order also granted in part plaintiff's motion for an award of counsel fees. In an accompanying statement of reasons, the court found plaintiff "established the validity of the note and mortgage, the default pursuant to the note and mortgage, and the [n]otice of intention to foreclose," thus "establish[ing] all [foreclosure] requirements."

The court incorporated part of the April 17, 2019 order, wherein defendants' default had been vacated. The April 17, 2019 order read:

> In [the Pathak defendants'] certifications, [they] each . . . deny executing the note and mortgage at issue in this foreclosure action. These statements would, if true, constitute a meritorious defense to foreclosure. However, the[y] . . . previously filed an [a]nswer in this matter [on June 18, 2015]. In [it], . . . [they] admitted to executing the note and mortgage at issue in this foreclosure action. The Pathak defendants' [a]nswer was subsequently stricken . . . . Moreover, the Pathak defendants executed a loan modification on February 15, 2013, which each of the Pathak defendants signed as guarantors. The signatures on this loan modification agreement were witnessed or attested to by two different New Jersey attorneys.

> The Pathak defendants' claims regarding their non-execution of the note and mortgage . . . do not constitute a meritorious defense based on their own admissions in their previously filed [a]nswer[] and . . . the evidence produced by plaintiff. . . . They cannot come back to the court . . . and adopt a position opposite to the position they originally adopted.
>
> [(Citations omitted.)]

The court concluded the "portions of defendants' cross-motion" that asserted the Pathak defendants did not execute the original note or mortgage were "misleading." Thus, the court determined plaintiff was entitled to a counsel fee award with the submission of an appropriate certification, but limited the award to "costs incurred in connection with filing the [summary judgment] motion." Subsequently, in a January 6, 2020 order, the court awarded plaintiff $6,786.90 in counsel fees.

After multiple corrective filings for deficiencies, plaintiff filed a motion for final judgment of foreclosure on August 17, 2021. In support, Shah certified the note continued to accrue interest past its maturity date at a rate of ten percent per year, amounting to $2,621.67 per month or $86.19 per day, totaling $252,831.16 in owed interest for the period October 28, 2013, to August 13, 2021, in addition to the $314,600 principal balance. Adding reimbursement for real estate tax payments, plaintiff claimed a total due of $584,860.16. Although

12

plaintiff also claimed either six or nine late charges for the period November 28, 2013, to November 17, 2019, at a "monthly late fee" of $131.08, plaintiff does not appear to have added the late fees to the total due. Defendants objected to the entry of final judgment, stating "no '[n]ote' exists as described by [p]laintiff," "no [n]ote has been attached as part of [p]laintiff's motion," and nothing supported adding late fees, real estate taxes, or interest accrued after the modified note matured.

On June 23, 2022, the court granted plaintiff's motion, and then entered final judgment in a June 28, 2022 order. Because defendants were in default, the court found that they did "not have standing, and if they did," they "improperly attempt[ed] to relitigate issues . . . already . . . decided." The court also found defendants' objection "[did] not specifically identify an error in the calculation of amount due" as required by Rule 4:64-1(d)(3). The court awarded plaintiff $574,285.97 "as . . . of February 1, 2020, together with interest as may be allowed by law," "counsel fees," and "additional taxed costs."

On September 29, 2022, we granted defendants' motion to file a notice of appeal as within time. On October 21, 2022, the trial court "[s]tay[ed] all enforcement of the [f]inal [j]udgment pending the appeal." On appeal, defendant raises the following points for our consideration:

13

[POINT] I

THE TRIAL COURT'S DECISION THAT PLAINTIFF MET ITS PROOF AS TO THE TERMS OF THE LOST SUBJECT NOTE CONFLICTS WITH THE LAW AS ARTICULATED BY THE SUPREME COURT IN INVESTORS BANK V. TORRES, 243 N.J. 25 (2020).

[POINT] II

THE TRIAL COURT ERRED IN DETERMINING THERE WAS NO GENUINE ISSUE OF MATERIAL FACT AS TO THE EXISTENCE OF, LOCATION OF, OR THE TERMS OF THE LOST SUBJECT NOTE.

[POINT] III

THE TRIAL COURT ERRED IN FINDING THAT THE LOST SUBJECT NOTE PROVIDED FOR ACCRUAL OF ANNUAL INTEREST PAST ITS MATURITY.

[POINT] IV

THE TRIAL COURT ERRED IN GRANTING LEAVE TO AMEND A COMPLAINT THAT FOR TWO AND A HALF YEARS FAILED TO NAME THE SOLE BORROWER OF THE LOST SUBJECT NOTE.

[POINT] V

THE TRIAL COURT ERRED IN AWARDING PLAINTIFF ATTORNEY['S] FEES AS A CONSEQUENCE TO DEFENDING AGAINST UNSUBSTANTIATED TERMS OF A COMMERICAL LOAN THAT MATURED AFTER ONE YEAR.

A-0070-22

## II.

We review the trial court's summary judgment ruling "de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. R. 4:46-2(c); see Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted. R. 4:46-2(c); see Brill, 142 N.J. at 540.
>
> [Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016) (citation reformatted).]

Where there is no material fact in dispute, "we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007), overruled on other grounds by Wilson ex rel. Manzano v. City of New Jersey, 209 N.J. 558 (2012)). "We review issues of law de novo and accord no deference

to the trial judge's [legal] conclusions . . . ." MTK Food Servs., Inc. v. Sirius Am. Ins. Co., 455 N.J. Super. 307, 312 (App. Div. 2018).

On the other hand, we search for an abuse of discretion when reviewing a trial court's grant of leave to amend a complaint, Port Liberte II Condo. Ass'n, Inc. v. New Liberty Residential Urb. Renewal Co., 435 N.J. Super. 51, 62 (App. Div. 2014) (citing Kernan v. One Wash. Park Urb. Renewal Assocs., 154 N.J. 437, 457 (1998)), or award of attorney's fees pursuant to statute, court rule, or contract, First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 425-26 (App. Div. 2007). An abuse of discretion arises when "the 'decision [was] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" United States ex rel. U.S. Dep't of Agric. v. Scurry, 193 N.J. 492, 504 (2008) (alteration in original) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

## III.

We first address the trial court's order granting plaintiff leave to amend its original complaint. Rule 4:9-1 states that "[a] party may amend any pleading" after "a responsive pleading is served . . . by leave of court which shall be freely given in the interest of justice." The Rule "'requires that motions for leave to amend be granted liberally' and that 'the granting of a motion to file an amended

complaint always rests in the court's sound discretion.'" Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006) (quoting Kernan, 154 N.J. at 456-57). In exercising its discretion, a court must engage in "a two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Ibid.

Here, we are satisfied the court did not abuse its discretion by granting plaintiff's motion to amend its initial complaint. Defendants assert they were prejudiced by plaintiff adding Gurudev as a defendant and "recharacteriz[ing]" the note. Where a "party . . . always has been aware of the proceedings," there is "no prejudice in allowing the complaint to be amended to name" that party. Kernan, 154 N.J. at 456. Defendants admit in their briefing that Kaushik Pathak owned Gurudev. He also executed the mortgage and modified note as its managing member. Because Kaushik Pathak was a named defendant in the initial complaint, Gurudev has been on notice of the foreclosure action from the beginning of the lawsuit.

Furthermore, as "'the underlying conduct, transaction or occurrence' charged [was] the same in both pleadings," defendants were not prejudiced by plaintiff's substantive modifications to the complaint. Notte, 185 N.J. at 499 (quoting Harr v. Allstate Ins. Co., 54 N.J. 287, 299 (1969)). Lastly, the

17

amendment was not futile. Gurudev was an integral defendant as the primary signer of both the mortgage and modified note. Therefore, we affirm the court's decision on this issue.

We now turn to the court's decision to grant plaintiff summary judgment. In so doing, we address the legal principles governing foreclosure. It is well-settled that to succeed, a party seeking to foreclose a mortgage must establish (1) "the validity of the mortgage," (2) "the amount of the indebtedness," and (3) "the right of the mortgagee to resort to the mortgaged premises." Great Falls Bank v. Pardo, 263 N.J. Super. 388, 394 (Ch. Div. 1993), aff'd, 273 N.J. Super. 542 (App. Div. 1994) (citing Cent. Penn Nat'l Bank v. Stonebridge, Ltd., 185 N.J. Super. 289, 302 (App. Div. 1982)).

Thus, the party "'must own or control the underlying debt'" to establish "standing to proceed with the foreclosure action." Wells Fargo Bank, N.A. v. Ford, 418 N.J. Super. 592, 597 (App. Div. 2011) (quoting Bank of N.Y. v. Raftogianis, 418 N.J. Super. 323, 327-28 (Ch. Div. 2010)). Stated differently, "either possession of the note or an assignment of the mortgage that predated the original complaint confer[s] standing." Deutsche Bank Tr. Co. Ams. v. Angeles, 428 N.J. Super. 315, 318 (App. Div. 2012) (citing Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 216, 225 (App. Div. 2011)).

"If a debt is evidenced by a negotiable instrument," such as a note, "Article III of the Uniform Commercial Code (UCC), N.J.S.A. 12A:3-101 to -605, in particular N.J.S.A. 12A:3-301," governs the debt.  Ford, 418 N.J. Super. at 597. Under N.J.S.A. 12A:3-301, a person entitled to enforce an instrument includes "a person not in possession of the instrument who is entitled to enforce the instrument pursuant to [N.J.S.A.] 12A:3-309."

N.J.S.A. 12A:3-309(a) provides that

> [a] person not in possession of an instrument is entitled to enforce the instrument if the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, the loss of possession was not the result of a transfer by the person or a lawful seizure, and the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

"By its plain terms, N.J.S.A. 12A:3-309 governs the rights of a party that was 'entitled to enforce' a lost note or other instrument at the time that it was lost."  Invs. Bank, 243 N.J. at 45.

> A person seeking enforcement of an instrument under [N.J.S.A. 12A:3-309(a)] must prove the terms of the instrument and the person's right to enforce the instrument. . . . The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is

19

adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

[N.J.S.A. 12A:3-309(b).]

In Investors Bank, our Supreme Court upheld the trial court's grant of summary judgment and entry of a judgment of foreclosure. 243 N.J. at 31. The Court concluded "the trial court was presented with competent evidence" that the original lender "had possessed the [n]ote but misplaced it," and "there was no genuine issue of material fact" as to the assignee's, Investors Bank's, "right to enforce the [n]ote." Ibid.

There, the defendant "Javier Torres signed a promissory note," "executed a residential mortgage," and eventually "defaulted on his obligations under the [n]ote." Id. at 29-30. The mortgagee, CitiMortgage, Inc., "discovered that it had lost the original [n]ote but had retained a digital copy setting forth its terms." Id. at 30. CitiMortgage, Inc., then "assigned the [m]ortgage and its interest in the [n]ote to . . . Investors Bank," which filed the foreclosure action. Ibid.

Relying on N.J.S.A. 12A:3-309, the defendant challenged Investors Bank's "right to enforce the [n]ote, based on the loss of the original." Invs. Bank, 243 N.J. at 30. To support its motion for summary judgment, Investors Bank submitted the digital copy of the note together with a lost note affidavit

20

prepared by a CitiMortgage, Inc., representative prior to the assignment of the mortgage and filing of the lawsuit. <u>Id.</u> at 49. Because the affidavit was "not inherently untrustworthy as a document prepared for litigation" and there was no dispute as to "the accuracy of the digital copy of the [n]ote" or "the terms of the lost [n]ote," the Court concluded the summary judgment record supported "the trial court's determination that Investors [Bank] had the right to enforce the [n]ote notwithstanding the loss of the original." <u>Ibid.</u>

Earlier, in <u>Ford</u>, we reversed a grant of summary judgment, concluding the plaintiff's failure to offer properly authenticated documents demonstrating its status as a holder of the debt instrument called into question plaintiff's standing to foreclose on the mortgaged property. 418 N.J. Super. at 600. There, the plaintiff had offered certifications of its agent that did not indicate the source of the agent's knowledge that the mortgage and note were "true copies." <u>Id.</u> at 599-600.

Applying these principles, we are satisfied that the summary judgment record was insufficient to establish the terms of the note under N.J.S.A. 12A:3-309(a) to maintain the foreclosure action. Since the inception of this action, plaintiff has never submitted an authenticated version of the original note. Instead, it provided the mortgage and modified note, as well as Shah's

certification and lost note affidavit. Because plaintiff did not prepare the lost note affidavit until after the foreclosure action was filed, we must subject it to "special scrutiny." Invs. Bank, 243 N.J. at 49. We acknowledge that defendants' claims are contradicted by admissions in stricken portions of their June 18, 2015 answer. Nonetheless, unlike the debtors in Investors Bank, defendants dispute the terms of the lost note. Ibid. In light of that dispute, we question whether the lost note affidavit withstands special scrutiny. See Pusatere v. New Amsterdam Cas. Co., 116 N.J.L. 359, 360-61 (E. & A. 1936) (affirming a trial court's summary judgment decision relying partly on admissions in the defendant's stricken answer as "sufficient, in the absence of any proof to the contrary").

To be sure, the modified note and mortgage establish the existence of an underlying debt. However, the exact terms of the note are less clear, presenting a genuine issue of disputed material facts. There are discrepancies both in the documentary evidence and in plaintiff's representations. The mortgage listed the initial principal as $312,000, while the modified note listed "the outstanding principal balance" as $314,600. Shah then certified the amount initially loaned to defendants was $314,600, contradicting the mortgage. Further, the mortgage specified monthly interest-only payments of $2,600, at a rate of ten percent

22

interest per year. On the other hand, the modified note did not state a specific dollar amount for interest payments but listed the same rate.

The draft of the original note that plaintiff provided does nothing to remedy these discrepancies as it was unsigned and unauthenticated. Moreover, the lost note affidavit does not assert that the unsigned draft was the "true cop[y]" defendants signed. Ford, 418 N.J. Super. at 599-600. Nor does it list the terms of the original note, other than stating the initial principal was $312,000. See Invs. Bank, 243 N.J. at 32, 49 (noting it was "uncontested that the terms of the [n]ote were established by [an unsigned] digital copy" where the affiant certified the digital copy was "properly endorsed" and "set forth the terms of the [n]ote").

The Pathak defendants also dispute signing the original note as guarantors. Nothing within the four corners of the mortgage mentions them in their individual capacities. Although Shah stated in her certification that the Pathak defendants executed the original note, she did not specify that they executed the original note as guarantors. It was only in the lost note affidavit that Shah stated for the first time that the Pathak defendants signed the original note as guarantors. Given the summary judgment record as well as our standard of

review, a genuine issue remains regarding whether the Pathak defendants guaranteed the original note.

In its November 7, 2019 order that is the subject of this appeal, the court never addressed whether plaintiff complied with N.J.S.A. 12A:3-309's standard to enforce a lost note. Because we agree with defendants that plaintiff failed to sufficiently "prove the terms of the instrument and [its] right to enforce the instrument," we reverse the summary judgment and final judgment of foreclosure orders in plaintiff's favor and remand for further proceedings. Given our holding, we also reverse the award of counsel fees related to plaintiff filing and prevailing in its summary judgment motion.[5] Our conclusion that the summary judgment and final judgment of foreclosure orders must be reversed makes it unnecessary to address defendants' remaining arguments, some of

---

[5] Defendants argue it was improper for the judge to consider a June 23, 2018 email sent by defense counsel to plaintiff's counsel "for the purpose of settlement negotiations" in denying defendants' motion for sanctions and granting in part plaintiff's motion for attorney's fees. See N.J.R.E. 408 ("When a claim is disputed as to validity or amount, evidence of statements . . . by parties or their attorneys in settlement negotiations . . . is not admissible either to prove or disprove the liability for, or invalidity, or amount of the disputed claim. Such evidence shall not be excluded when offered for another purpose . . . ."). Although we reverse the award of attorney's fees, we point out that the judge did not consider the email in making that award.

which we deem to be without sufficient merit to warrant discussion in a written opinion.  See R. 2:11-3(e)(1)(E).

In sum, we affirm the order granting plaintiff leave to file its first amended complaint, but reverse the November 7, 2019 order granting plaintiff summary judgment as well as the ensuing June 28, 2022 final judgment of foreclosure entered in plaintiff's favor.  We remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division